**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eva Cornell, | No. CV-21-00835-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Desert Financial Credit Union, et al., | |
| Defendants. | |

In this putative class action, Eva Cornell ("Plaintiff") alleges that Desert Financial Credit Union ("Desert Financial") violated certain federal regulations that require clear disclosure of a bank's overdraft practices. In response, Desert Financial has moved to compel arbitration based on an arbitration clause that it added to its standard terms and conditions several years after Plaintiff opened her account. (Doc. 11.) For the following reasons, the Court will order the parties to file supplemental briefing concerning whether the addition of this clause resulted in a valid contract modification.

## BACKGROUND

I.  <u>Factual Background And Arbitration Agreement</u>

Although Plaintiff alleges a significant number of facts in her complaint, only a few are relevant to the motion to compel arbitration. The Court accordingly limits its recitation to uncontested facts that bear on arbitrability and deals with disputed facts as they become relevant to the Court's analysis.

It is undisputed that, when Plaintiff originally opened her account with Desert

Financial, there was no arbitration clause in the account agreement.  (Doc. 11 at 3; Doc. 12-3; Doc. 14 at 6.)  However, when signing the relevant applications, Plaintiff agreed to be bound by Desert Financial's account terms and conditions and agreed that Desert Financial "may change those terms and conditions from time to time."  (Doc. 12-1 at 2; Doc. 12-2 at 2.)  Plaintiff also elected to receive monthly bank statements from Desert Financial via email.  (Doc. 12 ¶ 7; Doc. 12-8; Doc. 12-9.)

It is undisputed that Desert Financial sent Plaintiff's monthly statement for the period ending on March 20, 2021 "to the primary email address it has on file for [Plaintiff]."  (Doc. 12 ¶ 6.)[1]  However, Plaintiff avows in a declaration that she did not actually review that statement (or any of the other monthly statements that Desert Financial emailed to her).  (Doc. 18-1 ¶ 3.)  At any rate, it is undisputed that the monthly statement at issue included a graphic inlay that communicated the following:

> NOTICE
> Change-in-Terms
>
> Effective February 10, 2021, Desert Financial updated its Statements of Terms, Conditions, and Disclosures to change how we will resolve legal disputes related to your accounts at Desert Financial.
>
> Please see the Dispute Resolution section of the Statement of Terms, Conditions, and Disclosures on www.desertfinancial.com/disclosures for more information.
>
> Visit DesertFinancial.com/Disclosures

(Doc. 12-6 at 2.)  It is also undisputed that the cross-referenced website displayed Desert Financial's updated account agreement, which now includes the following arbitration clause:

---

[1] Shaun Mitchell, the regional manager of the Desert Financial branch where Plaintiff opened her account, declared under penalty of perjury that Desert Financial "sent copies of the[] periodic statements to the primary email address it has on file for [Plaintiff]."  (Doc. 12 at 2.)  Although Plaintiff provides her own declaration avowing that she did not *see* the statement, she does not dispute that Desert Financial *sent* it.  (Doc. 18 at 1.)  As a result, there is no dispute as to whether Desert Financial sent the statement to Plaintiff.

> **DISPUTE RESOLUTION; MANDATORY ARBITRATION. READ THIS PROVISION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND THE CREDIT UNION HAVE AGAINST EACH OTHER WILL BE RESOLVED**.
>
> a.   Except as expressly provided herein . . . , you agree that any controversy, dispute, or claim ('Claim') between you and Us that arises out of or relates to [this Agreement], your account, and/or the relationships of the parties hereto shall be resolved or otherwise settled by binding arbitration . . . .
>
> * * *
>
> f.   **THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD THE RIGHT TO LITIGATE THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE. HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED THROUGH AN ARBITRATION. . . .**
>
> * * *
>
> h.   Arbitration is not a mandatory condition of you maintaining an account with Credit Union.  If you do not want to be subject to this arbitration provision, YOU MAY OPT OUT of this Arbitration Provision . . . .

(Doc. 12 ¶ 5; Doc. 12-4 at 6-7.)  Finally, it is undisputed that Plaintiff never subsequently opted out of the arbitration provision.

II.   Procedural Background

On May 5, 2021, Plaintiff filed the complaint.  (Doc. 1.)

On June 24, 2021, Desert Financial moved to compel arbitration.  (Doc. 11.)  That same day, Desert Financial separately moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 13.)

On July 26, 2021, Plaintiff filed responses to both motions.  (Docs. 18, 19.)

On August 24, 2021, Desert Financial filed replies in support of both motions.  (Docs. 22, 23.)

On September 30, 2021, Plaintiff filed a notice of supplemental authority. (Doc. 24.)

On October 4, 2021, Desert Financial responded to Plaintiff's notice. (Doc. 25.)

**ANALYSIS**

The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, absent a valid contractual defense, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

I.  Gateway Questions Of Arbitrability

The questions of whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue are sometimes called the "gateway" questions of arbitrability. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Although the gateway questions are ordinarily resolved by the court, parties may agree to arbitrate one or both gateway issues by including a delegation clause in the arbitration agreement: "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. The evidence of the parties' intent to delegate such issues to the arbitrator must be "clear and unmistakable." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

Desert Financial asserts that, because the gateway questions have been expressly delegated to an arbitrator, this Court must compel arbitration without considering any preliminary issues. According to Desert Financial, this outcome is compelled by the facts

that (1) the arbitration clause appearing in the current version of the Desert Financial account agreement states that "all issues are for the arbitrator to decide, including . . . all gateway issues of arbitrability"; and (2) that arbitration clause also requires that the parties arbitrate under the American Arbitration Association's ("AAA") rules, which the Ninth Circuit has taken to generally mean that the parties agreed to arbitrate arbitrability. (Doc. 11 at 5-7.) In response, Plaintiff asks the Court to retain this case until Desert Financial "demonstrate[s] that [Plaintiff], at the very least, gave implied consent to the [arbitration] term." (Doc. 18 at 3.) Plaintiff also emphasizes that a "court always decides the threshold issue of contract formation." (*Id.*) Desert Financial largely abandons the arbitrability issue in its reply.

Plaintiff has the better side of this issue. It may be true that the arbitration clause appearing in the current version of Desert Financial's account agreement allows an arbitrator to determine the gateway questions and requires the application of AAA's rules during the arbitration, but "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc., v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Plaintiff asserts there was never a "[m]eeting of the [m]inds" about the arbitration agreement and she thus cannot be bound by any of its terms. (Doc. 18 at 4.) The Court agrees—when, as in this case, there is a legitimate dispute about whether the party opposing arbitration assented to the modification of a contract to add an arbitration clause, it would be improper for a court to robotically compel arbitration based on delegation principles without conducting any independent analysis of the contract-modification issue.

The primary case on which Desert Financial relies, *Brennan,* does not compel a different result. There, the "single issue" before the Ninth Circuit was "who—an arbitrator or a judge—should decide whether the Arbitration Clause is unconscionable." 796 F.3d at 1128 (quotation marks omitted). The *Brennan* court took as a given that the parties had formed an agreement to arbitrate. *Id.* at 1127-28 ("Brennan . . . signed an Employment

1  Agreement with Opus Bank . . . [he] acknowledged that section 16 of the Employment
2  Agreement (the Arbitration Clause), entitled 'Dispute Resolution Procedures,' was a
3  mandatory arbitration provision . . . .") Here, Plaintiff disputes that precise issue. *Brennan*
4  also limited its holding "to the facts of the present case, which [involved] an arbitration
5  agreement between sophisticated parties." *Id.* at 1131 (quotation marks omitted). The
6  court explicitly did not decide "the effect [if any] of incorporating AAA arbitration rules
7  into consumer contracts or into contracts of any nature between unsophisticated parties."
8  *Id.* (cleaned up). Here, Desert Financial does not assert that Plaintiff is a sophisticated
9  party.
10  Desert Financial's reliance on this Court's ruling in *Herrera v. Verra Mobility*
11  *Corp.*, 2020 WL 6781269 (D. Ariz. 2020), is misplaced for similar reasons. There, the
12  parties did not dispute the existence of an agreement to arbitrate and simply disagreed about
13  who would decide whether a given party could bring a claim under that agreement. *Id.* at
14  *3.
15  II.   Validity Of Contract Modification
16  As noted, the district court's role under the FAA is "limited to determining (1)
17  whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement
18  encompasses the dispute at issue." *Chiron Corp.,* 207 F.3d at 1130. Plaintiff seemingly
19  does not dispute that, if she validly assented to the current version of Desert Financial's
20  account agreement, the arbitration clause within that agreement encompasses the dispute
21  at issue. Thus, it is only necessary to address whether a valid agreement to arbitrate exists.
22  If so, the Court must "direct the parties to proceed to arbitration on issues as to which an
23  arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218.
24      A.  **Legal Standard**
25  The party seeking to compel arbitration "bears the burden of proving the existence
26  of a valid arbitration agreement by the preponderance of the evidence." *Bridge Fund Cap.*
27  *Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). "It is permissible
28  to consider evidence outside the pleadings when resolving a motion to compel arbitration.

To the extent there are conflicts in the evidence submitted by the parties, the court applies a standard similar to that applicable for a motion for summary judgment." *Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 721 (D. Ariz. 2020) (citations and internal quotation marks omitted). If, after review of the parties' arguments, there is a factual question about the formation of the agreement to arbitrate, the Court must deny the motion and resolve the dispute through an "evidentiary hearing or mini-trial." *McCarthy v. Providential Corp.*, 1994 WL 387852, *2 (N.D. Cal. 1994).

B.   **The Parties' Arguments**

As noted, it is undisputed that when Plaintiff opened her account with Desert Financial, the account agreement did not require arbitration. Nevertheless, Desert Financial asserts that "[b]efore Plaintiff filed this lawsuit, Desert Financial updated its Account Agreement. Desert Financial provided notice to Plaintiff that it had 'updated its Statement of Terms, Conditions, and Disclosures to change how we will resolve legal disputes related to your accounts' and directed Plaintiff to those updated terms on Desert Financial's website." (*Id.* at 2.) The agreement then stated that "[a]rbitration is not a mandatory condition of you maintaining an account with Credit Union. If you do not want to be subject to this arbitration provision, YOU MAY OPT OUT of this Arbitration Provision." (*Id.*) Desert Financial argues that because Plaintiff failed to "exercise her right to opt out of the arbitration provision," "an agreement to arbitrate between the parties" exists. (*Id.* at 8.)

Plaintiff responds that there was no "[m]eeting of the [m]inds" about the arbitration clause. (Doc. 18 at 4.) Because there was no arbitration clause in the account agreement when Plaintiff opened her account, Plaintiff asserts that the "motion to compel turns on how [Desert Financial] might have obtained Plaintiff's consent to arbitrate, when she had not previously consented to do so." (*Id.*) According to Plaintiff, although Desert Financial argues "that it gave Plaintiff notice of the arbitration clause on her monthly bank statement," "Plaintiff did not actually receive notice through this method." (*Id.* at 6.) Additionally, Plaintiff asserts that, for several reasons, Desert Financial "failed to present

- 7 -

the necessary evidence required to demonstrate Plaintiff's implied consent to the arbitration clause." (*Id.*)

Desert Financial replies that, when Plaintiff opened her account, she agreed that Desert Financial "may, at any time, change [the agreement] by providing you with the appropriate notice required by law," including "communications in electronic format," such as "disclosures, notices, [and] agreements." (Doc. 22 at 3.) Desert Financial notes that Plaintiff also agreed that communications would "be deemed to have been provided to you if . . . sent to your e-mail address previously provided to Credit Union" or "made available to you in electronic form on the Credit Union website." (*Id.*) Given that Desert Financial sent Plaintiff an electronic statement providing notice that "Desert Financial updated its . . . Terms . . . to change how we will resolve legal disputes related to your accounts at Desert Financial," Desert Financial concludes that it "sent Plaintiff notice of the updated [terms] in the exact manner Plaintiff agreed to receive such notice" and Plaintiff accepted the terms by failing to opt out. (*Id.* at 4-5.)

C.  **Analysis**

Courts look to state law to determine whether a valid agreement to arbitrate exists. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). Here, the parties agree that Arizona law applies. (Doc. 18 at 4; Doc. 22 at 3.)

The key question is whether Desert Financial validly modified its contract with Plaintiff, which did not originally include an arbitration clause, to add such a clause. In Arizona, "to effectively modify a contract, . . . there must be: (1) an offer to modify the contract, (2) assent to or acceptance of that offer, and (3) consideration." *Demasse v. ITT Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999). "An offer has no binding effect unless and until accepted by the offeree to whom the offer was directed." *Goodman v. Physical Res. Eng'g, Inc.*, 270 P.3d 852, 855 (Ariz. Ct. App. 2011).

Here, the first and third elements of the modification test are not seriously disputed—it is clear that Desert Financial offered to modify the terms and conditions of its contractual relationship with Plaintiff, by providing notice in the March 2021 account

- 8 -

statement that it was changing those terms and conditions to add an arbitration clause, and Plaintiff does not dispute that Desert Financial gave adequate consideration for the proposed modification. Thus, the only disputed issue is whether Plaintiff "assent[ed] to or accept[ed]" the modification offer.

Unfortunately, none of the cases cited by the parties provide authoritative guidance on how Arizona courts would resolve this issue. In support of its claim that Plaintiff did accept the modification offer, Desert Financial cites *Hart v. Charter Commc'ns, Inc.*, 814 F. App'x 211 (9th Cir. 2020), *Needleman v. Golden 1 Credit Union*, 4747 F. Supp. 3d 1097 (N.D. Cal. 2020), *CenTrust Mortg. Corp. v. PMI Mortg. Ins. Co.*, 800 P.2d 37 (Ariz. Ct. App. 1990), and *W. Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 796 S.E.2d 574 (W. Va. 2017). (Doc. 22 at 4.) In support of her claim that she did not accept the modification offer, Plaintiff cites *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 777 F. App'x 241 (9th Cir. 2019), *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279 (9th Cir. 2017), *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014), *Adams v. Liberty Bank*, 2021 WL 3726007 (D. Conn. 2021), and *Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 110742 (D. Alaska 2020). (Doc. 18 at 4-6; Doc. 24.)

The problem with the parties' reliance on *Norcia*, *Nguyen*, *Knutson*, *Velasquez-Reyes*, *Needleman*, and *Hart* is that all of those cases apply California law or its equivalent.[2] California has a well-developed body of law concerning electronic consumer agreements, and in that state "mutual assent frequently turns on whether the consumer had reasonable notice of a merchant's terms of service agreement." *Needleman*, 474 F. Supp. 3d at 1103. When determining whether a consumer had reasonable notice, California courts apply the theories of "constructive notice" and "inquiry notice," which may result in a finding of acceptance even when a consumer does not have actual notice of a contract's terms. *Id.* However, the parties have not cited (and the Court has not found) any Arizona cases adopting similar theories of notice in a consumer contract setting.

---

[2] *Nguyen* applied New York law, but the Ninth Circuit found that "both California and New York law dictate the same outcome." 763 F.3d at 1175.

- 9 -

Next, in *Coleman*, which applied Alaska law, it was "undisputed" that the defendant did not give notice to its members before adding an arbitration provision. 2020 WL 110742 at * 5. Additionally, the court noted that the defendant "did not comply with the contract's specified method for modification." *Id.* For these reasons, *Coleman* is of little utility here.

Plaintiff's invocation of *Adams* is even more misplaced. It has nothing to do with arbitration or contract formation.[3]

Finally, although *CenTrust* is an Arizona case that mentions the concept of "inquiry notice," it did not apply that concept to the question of contract formation (or modification), let alone suggest that a consumer contract may be modified through inquiry notice—instead, it simply recognized that "an insurer cannot rescind a policy because of an insured's misrepresentations if the insurer knows the true facts or has sufficient indications that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth." 800 P.2d at 43 (citations and internal quotation marks omitted). This discussion has little apparent relevance to the issues presented here.

This leaves *West Virginia CVS Pharmacy*, which is a decision by the West Virginia Supreme Court applying Arizona law. There, a group of pharmacies signed "Provider Agreements" with CVS in 2004. 796 S.E.2d at 583-84. By signing these agreements, the pharmacies agreed to be bound by CVS's "Provider Manual." *Id.* The Provider Manual, in turn, contained a provision stating that CVS could, "[f]rom time to time, . . . amend the Provider Agreement, including the Provider Manual . . . , by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective." *Id.* Critically, although the Provider Manual did not contain an arbitration clause at the time the pharmacies signed the Provider Agreements, CVS added such a clause in 2009. *Id.* One question addressed in *West Virginia CVS Pharmacy* was whether the pharmacies

---

[3] Although Plaintiff may have cited *Adams* primarily for the purpose of responding to a separate Rule 12(b)(6) motion filed by Desert Financial, the final sentence of Plaintiff's notice of supplemental authority states that "[t]his Court should adopt the reasoning in the foregoing case and should deny Defendant's Motion to Compel Arbitration . . . ." (Doc. 24 at 3.)

- 10 -

had validly assented to the addition of the arbitration clause, such that they could be compelled to arbitrate their claims against CVS. *Id.* The West Virginia Supreme Court decided this question in the affirmative, concluding that, "under Arizona law, the arbitration agreement was incorporated by reference." *Id.* The court identified two Arizona cases as supporting this conclusion: (1) *Capital One Bank (USA), N.A. v. Davey*, 2013 WL 6729261 (Ariz. Ct. App. 2013); and (2) *Weatherguard Roofing Co. v. D.R. Ward Construction Co.*, 152 P.3d 1227 (Ariz. Ct. App. 2007).

Although *West Virginia CVS Pharmacy* certainly provides support for Desert Financial's position in this case, given its application of Arizona law and the close similarity between its facts and the alleged contract modification here, it is not dispositive. As an initial matter, "[i]n determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court. If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict how the state high court would resolve it." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citation and internal quotation marks omitted). Because *West Virginia CVS Pharmacy* was not a decision by the Arizona Supreme Court, it does not provide definitive guidance on how Arizona law would apply to the contract-modification issue posed in this case.

Additionally, the West Virginia Supreme Court relied heavily on *Capital One Bank (USA), N.A. v. Davey*, 2013 WL 6729261 (Ariz. Ct. App. 2013), in formulating its understanding of Arizona law. The difficulty with this approach is that *Capital One Bank* is an unpublished decision issued by the Arizona Court of Appeals in 2013. Under Arizona law, such a decision is not only non-precedential—it is not even citable. *See* Ariz. R. Sup. Ct. 111(c)(1)(C) ("Memorandum decisions of Arizona state courts are not precedential and such a decision may be cited only . . . for persuasive value, but only if it was issued on or after January 1, 2015.").[4]

---

[4] The Court also notes that *Capital One Bank* can be construed as containing some internal inconsistencies. On the one hand, *Capital One Bank* states that a contract-modification offer "cannot be accepted unless the offeree *actually knows* of the offer's existence." 2013 WL 6729261 at *5 (emphasis added). This passage suggests that

- 11 -

The other Arizona decision on which the West Virginia Supreme Court relied, *Weatherguard Roofing Co. v. D.R. Ward Construction Co.*, 152 P.3d 1227 (Ariz. Ct. App. 2007), is a published decision, so it is fair game for purposes of assessing the status of Arizona law. *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir. 1989) ("The decisions of the state's intermediate appellate courts are data that a federal court must consider in undertaking this analysis."). Unfortunately, the Court does not read *Weatherguard Roofing* as directly addressing the issue posed here. In *Weatherguard Roofing*, a general contractor signed a prime contract with a client to build a residential home. 152 P.3d at 1229. This contract contained an arbitration clause. *Id.* Later, the general contractor entered into a series of separate contracts with a subcontractor to perform waterproofing and other tasks. *Id.* at 1228. Although the subcontracts did not specifically refer to arbitration, "the last page of [each] subcontract stated, 'The attached General Conditions are part of the subcontract.'" *Id.* at 1229. Given this backdrop, the Arizona Court of Appeals concluded that the arbitration clause of the prime contract was properly incorporated by reference into the subcontracts, "even if [the general contractor] failed to attach a copy of the general conditions to the subcontract." *Id.* at 1230.

*Weatherguard Roofing* differs from this case because the question there wasn't whether a contractual partner could modify a contract years after it was signed by adding an arbitration clause and then sending notice of the modification to its counterparty—instead, the issue was whether an arbitration clause that existed at the time of contract formation (albeit in a different document) could be expressly incorporated into the contract by reference. Accordingly, *Weatherguard Roofing* does not compel a ruling in Desert

---

subjective knowledge on the part of the offeree is required. On the other hand, *Capital One Bank* goes on to hold, two sentences later, that the offeror's modification attempt was invalid because it had "not shown that the [offeree] received the new agreement or that it followed its own guidelines for supplying adequate notice of a change in terms to their customer agreement." *Id.* This language suggests that subjective knowledge on the part of the offeree *isn't* required—instead, it may be enough for an offeror to send the proposed modification to the offeree through a communication channel to which the offeree previously agreed. This seeming inconsistency is problematic here because both circumstances are present—Plaintiff claims that she never actually saw the modification offer, even though it is undisputed that the offer was sent to her through a communication channel to which she consented.

Financial's favor on the disputed contract-modification issue in this case.

In sum, the cases cited in the parties' briefs do not fully address the key legal issue in this case—whether, under Arizona law, it is enough for a party seeking to modify a contact to send notice of the proposed modification to the offeree through a communication channel to which the offeree previously consented (which, it is undisputed, occurred here), or whether the offeror must also show that the offeree had actual, subjective knowledge of the proposed modification (which, according to Plaintiff's evidence, was absent here). Rather than attempt to resolve this issue through its own independent research, the Court will solicit supplemental briefing from the parties.

Accordingly,

**IT IS ORDERED** that the parties submit supplemental briefing on the issue identified above. Each party's brief must be filed by October 22, 2021 at 5:00 p.m. and may not exceed seven pages.

Dated this 8th day of October, 2021.

Dominic W. Lanza
United States District Judge